## Case No. 3,125.

### CONOVER v. ROACH et al.

[4 Fish. Pat. Cas. 12.] [1]

Circuit Court, S. D. New York. Jan., 1857.

PATENTS — "MACHINE FOR SPLITTING WOOD" — WHAT MAY BE PATENTED — INVENTION — COMBINATION—EQUIVALENTS—CONSTRUCTION OF SPECIFICATION—EXPERT TESTIMONY.

1. When a patentee patents a machine, he can not patent either a purpose or effect, but the mechanical means, devices, and organization which his machine embodies. When the means, devices, and organization are patented, the patentee is entitled to the exclusive use of this mechanical organization, device or means, for all the uses and purposes to which they can be applied, to every function, power, and capacity of his patented machine, without regard to the purposes to which he supposed originally it was most applicable, or to which he supposed it was solely applicable, if such were his original view.

[Cited in McComb v. Brodie, Case No. 8,-708.]

2. When the patentee has limited his claim to the combination of parts, those parts, except in the combinations claimed, are conceded by the patentee to be old.

3. A mere change of form in the elementary parts of a combination, or in the different parts of a machine, which is patented, does not change the character and principle of the machine, provided the spirit, substance, and principle of the machine are retained, and the substitution of one well-known mechanical equivalent for another, is not such a change as will alter the character of the machine, or shield infringers from the consequences of an infringement.

4. It is a question of law, for the court to determine, what construction shall be placed upon the language contained in the specification.

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

5. The claims of Conover's patent for "machine for splitting wood," granted May 15, 1855, are limited to the combinations specified, in which a moving bed or platform, having those peculiar and distinguishing features and characteristics of the movable bed or carriage described in the specification, is to be found; and the patent can not be avoided by the prior use, or infringed by the subsequent use of any combination in which a movable bed or carriage, having those peculiar and distinguishing features, or its equivalent, is not to be found.

[Cited in Johnson v. Onion, Case No. 7,401; Rowell v. Lindsay, 6 Fed. 296.]

6. It is not enough, in order to show that one mechanical device is the equivalent of another— that it accomplishes the same result, or that it produces the same effect, unless that effect is produced by substantially the same mode of operation.

[Cited in Gottfried v. Phillip Best Brewing Co., Case No. 5,633.]

7. It is necessary, in order to authorize the jury to find that one device, or a series of devices, all operating to the same end, is or are mechanical equivalents for other devices, that they effect the same substantial purposes, by substantially the same mode of operation.

8. It may be assumed in most patent cases, that neither party would call experts on their side, unless they had supposed that their opinions in reference to the straining point of the case, would be directly opposed to the opinions which they suppose will be expressed by the experts of the adversary. Their well-considered and deliberately-formed opinions are asked in advance, and if they are found to be adverse to the party who seeks such opinion, that expert is not called on his part.

9. An invention, in the sense of the patent law, means the finding out, the contriving, the creating of something which did not exist, and was not known before, and which can be made useful and advantageous in the pursuits of life, or which can add to the enjoyment of mankind.

10. The thing patented must be new, and it must be useful, to an appreciable extent, although the measure of usefulness is not material.

11. If a party finding a machine calculated and intended for the accomplishment of one purpose, discovers or conceives that it is able to accomplish another purpose, and that purpose can be accomplished by the organization which has before been produced, he can have no patent for the application of this old machine to a new use.

At law. This was an action on the case [by Jacob A. Conover against Peter R. Roach and others], tried before Judge Hall, and a jury, to recover damages for the infringement of letters patent [No. 12,857], for an "improved machine for splitting wood," granted to plaintiff, May 15, 1855. The mode of operation of the machine was substantially as follows: The blocks of wood were placed upright on an endless movable bed. A plate with an elastic pad held the block down to the bed during the descent and the rising of the knife. The knife had four blades forming a cross, working through a corresponding slot in the plate. As soon as the knife cut through the block and was again lifted above the block and plate, the plate was raised by the operation of a cam, and a forward motion of the bed took place to advance or feed the next block. The claims were as follows: "The movable bed or carriage for carrying and advancing the blocks of wood in combination with the reciprocating cutters, operating at right angles with the surface of the bed or carriage, substantially as and for the purpose specified. Also, in combination with the bed or carriage and reciprocating cutters, substantially as specified, the employment of the clearing-plate, through which the cutters pass, substantially as and for the purpose specified. Finally, providing the said clearing-plate with an elastic pad, and imparting to it an up and down motion, substantially as specified, in its combination with the bed or carriage and reciprocating cutter, as specified; by means of which the said plate, under the combination specified, performs the double office of holding the blocks and clearing the cutters, as specified."

P. Van Antwerp and C. M. Keller, for plaintiff.

George Gifford, for defendants.

HALL, District Judge, charged the jury as follows: The action is brought by the plaintiff for the purpose of recovering damages for an alleged infringement of a patent granted under the authority of the laws of the United States; and although, after the experience which you as jurors have had in this case, it may be considered somewhat unnecessary to refer you to the provisions of the law which authorize the granting of patents for inventions, I shall nevertheless deem it expedient to refer you to some of those provisions, with a view of guiding your action in the present case.

You are aware, gentlemen, that for the purpose of promoting the progress of the useful arts, congress had the power, under the constitution of the United States, to give for a limited time to inventors the exclusive right, or privilege, of using their inventions; and when that right is given in accordance with the law of congress, adopted for that purpose, that exclusive privilege becomes the property of the inventor, and any person who takes that property from him by an unauthorized use of the invention patented, becomes an infringer of his rights, and is liable in damages precisely as though he had been guilty of taking any other property belonging to the patentee. The exclusive right to use is the property of the patentee, and whoever interferes with it must respond in damages whenever a case is brought for trial in a court of justice. But you will perceive, gentlemen, that it would be extremely unjust that a party should be prosecuted for the infringement of a patent unless he had some means within his reach of determining precisely what he had the right to use, and precisely what he was compelled to refrain from using. And it is for this reason, among others, that the law of congress, which authorizes the issuing of letters patent for inventions, requires that the inventor, when

he applies for a patent, shall present, with his application, what is called a "specification," describing and defining the limits of his invention. The statute provides: "That before any inventor shall receive a patent for any such new invention or discovery, he shall deliver a written description of his invention or discovery, and of the manner and process of making, constructing, using or compounding the same, in such full, clear, and exact terms, avoiding unnecessary prolixity, as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and in case of any machine, he shall fully explain the principle and the several modes in which he has contemplated the application of that principle or character by which it may be distinguished from other inventions; and shall particularly specify and point out the part, improvement, or combination which he claims as his own invention or discovery."

This specification is required for the double purpose: first, as I have before told you, of enabling the public to understand precisely what has been secured to the patentee; and, in the next place, to enable the public, after the expiration of the patent, to put in successful practice the invention from the description alone which has been furnished by the patentee.

In this case, the plaintiff, upon the application at the patent office for the issuing of the patent upon which this suit is brought, presented a specification describing and defining the limits and character of his invention, which specification, or a copy of it, is annexed to the letters patent, which are the foundation of this suit. I shall presently have occasion to state to you, gentlemen, the construction which I have felt it to be my duty to give to that specification in respect to the extent of the claims made by the patentee therein. But before proceeding to that portion of the case, it is, perhaps, proper that I should say to you, that before any patent can be issued, or, if issued, before it can be sustained in any court of justice, the party applying for that patent, or some person under whom he claims, must have invented some new and useful improvement in some machine, manufacture, or art, or composition of matter, and therefore it becomes necessary for us to understand, to some extent, what constitutes an invention in the sense of the patent law. An invention in the sense of the patent law, as I understand it, means the finding out—the contriving, the creating (and I speak now in respect to a machine, or an improvement upon a machine) of something which did not exist, and was not known before, and which can be made useful and advantageous in the pursuits of life, or which can add to the enjoyment of mankind. In other words, the thing patented must be new, and it must be useful, to an appreciable extent, although the meas-

ure of that usefulness is not material. Any degree of utility appreciable by a jury is sufficient, upon the question of utility, to sustain a patent.

In connection with this question of invention, it is proper to state to you, that the mere application of an existing machine, or organization to a new use, is not the subject matter of a patent. If a party finding a machine calculated and intended for the accomplishment of one purpose, discovers or conceives that it is able to accomplish another purpose, and that purpose can be accomplished by the organization which has before been produced, he can have no patent for the application of this old machine to a new use. In other words, the invention patented, when a patent is taken out for a machine, is the machine itself—the mechanical means and devices by which certain results in the operation of the machine can be obtained; and when the inventor has obtained a patent for his invention, he is entitled to the exclusive use of it, if that invention is a machine, for all the uses and purposes to which that machine, without the exercise of any inventive power, can be usefully applied. In other words, when he patents a machine, he can not patent either a purpose or an effect, but the mechanical means, devices, and organization which his machine embodies; and when these means, devices, and organization are patented, the patentee is entitled to the exclusive use of this mechanical organization, device, or means, for all the uses and purposes to which they can be applied, to every function, power, and capacity of his patented machine, without regard to the purposes to which he supposed originally it was most applicable, or to which he supposed it was solely applicable, if such were his original view. Nevertheless, gentlemen, a patent may be granted for an improvement upon an existing organization, that existing organization being capable of performing certain functions, or producing certain results only, if that improvement, in addition, enables the machine to accomplish additional and different purposes. For instance, in the case of the machine patented by the plaintiff: suppose that originally this machine had been patented and intended, or had been patented, and when patented had been intended for some purpose similar to that of the cracker machine of Nevens, if you please, in the accomplishment of which purpose it was not at all necessary or desirable, that these flanches or side ledges upon the movable bed or carriage should be used, and therefore in that organization the bed had been a plain surface such as is exhibited in the moving bed in the case of the cracker machine; but this plaintiff in this action desiring to use this machine for the accomplishment of the particular purpose to which he intended to apply the machine or organization, in which were contained the combinations mentioned in his patent, had

added this flanch or ledge to this machine, he could have obtained a patent for that improvement, upon the existing organization, and for that only, and the patent for that improvement, while it would have restrained the plaintiff, if he had patented the machine without these ledges, from using the ledges upon the machine which he had patented, would nevertheless have given no right to the patentee of the improvement to use the original machine, if the original machine had been patented as a distinct and entire organization. It may therefore happen very frequently in the progress of invention, that the original inventors of a machine, calculated to accomplish a particular purpose, may bring an action against a person who has patented an improvement upon that machine, for using the original machine, while the party who had patented the original machine may also be liable to an action for the use, not of what he has patented, but for the use of what has been patented to his adversary. Therefore, gentlemen, in this case, it does not follow from the fact (if the fact should be so) that the plaintiff in this action might be sued for a violation of a patent granted to Howard, that this plaintiff, if he has made a new and useful combination, can not maintain an action even against the holders of the Howard patent. Their rights are distinct and independent, and are subject to be litigated and determined in suits brought each upon a distinct patent, having, so far as the question of infringement is concerned, no necessary and absolute dependence upon each other. I have said to you before, gentlemen, that it was necessary for an inventor, and necessary for this plaintiff, in presenting his application for a patent, to annex to his application a description of his invention, and a statement of the claims which he makes, for the purpose of showing to the patent office and to the public, what he desires to restrain the public from using in connection with his invention. In this case, the plaintiff, in the specification annexed to his patent, has described, as he properly might, substantially the machine represented by the model now before me, and which has been exhibited to the jury in the progress of the trial. He has described, as he properly might, the whole of his organization, but nevertheless when he comes to that part of the specification in which it becomes necessary for him to define and limit the precise extent of his claim, he has not claimed, as he could not properly claim, the whole of this machine as his entire invention. In other words, he has not claimed the peculiar form of this knife, which he could not have done, as you will perceive, because this peculiar form of knife was found in the patent previously granted to Howard. He has not claimed other portions of the machine, but having described the whole machine he then proceeds to define precisely the character and extent of his invention. He says first: "I do not confine myself to the form of knife described and represented, as that can be changed at pleasure."

Or rather perhaps I should say, before reading any portion of this specification, that the plaintiff instead of claiming it as an entire organization—as wholly his own invention, or claiming any distinct, separate, and independent part of it as new, has limited his claim to the combination of parts, and as he has limited his claim to the combination of parts, for all the purposes of this action, these parts, except in the combinations claimed, are conceded by the patentee to be old. And he then says before describing the combination: "I do not confine myself to the form of knife described and represented, as that can be changed at pleasure, although I prefer the form described, nor do I confine myself to the use of an endless bed, as a reciprocating bed or carriage will answer the purpose, but not so well."

Now, you will perceive, that in this part of the specification, he says distinctly, that he does not confine himself to the form of this knife—that knife constituting, as you will perceive, one of the elements, or elementary parts of the combination substantially claimed; nor does he confine himself to this endless bed. He says, and properly I think, that "a reciprocating bed or carriage will answer the purpose, but not so well," for the reason, that if it is a reciprocating bed or carriage, when it has passed through the machine to the extent of its length, it must be brought back before it can be again loaded, and again passed through the machine, and therefore time would be lost in this retrograde motion. He proceeds: "Nor do I confine myself to the making of the holding or clearing plate movable, or with an elastic pad on its under surface, as it well answers the purpose of a clearer, without these features, which add to it the function of holding down the blocks firmly during the operation of splitting."

Gentlemen, in the defendant's model, as in the plaintiff's machine, this central plate, as you will perceive, is allowed to have an up and down motion. It is fitted upon the blocks with an elastic pad, and this elastic pad, with the up and down motion, enables him to perform in addition to the proper office of a clearing plate, the additional office of pressing upon the wood to be split, and holding it in place while under the operation of the machine. The plaintiff therefore clearly indicates in this point of the specification, that he does not confine himself to a plate having this up and down motion, or this elastic pad, but he claims as his invention, and as a new and useful combination, the use of the clearing plate in combination with these cutters, and with the movable bed or carriage, a plate which can be used, and is capable of being used as a clearer plate alone, and does not at any period in the op-

eration of the machine press upon the wood or material to be cut. You will see when I come to read the claim that he keeps up the same distinction that he has subsequently made. Then he adds: "It will be obvious to the mechanician that the several parts constituting the said machine may be varied in form, or by the substitution of equivalents, and still possess the substantial mode of operation which I have invented."

And this was doubtless done for the purpose of having it appear upon the face of the specification, what the rule of law is upon that subject, that a mere change of form in the elementary parts of a combination, or in the different parts of a machine which is patented, does not change the character and principle of the machine, provided the spirit, substance, and principle of the machine are retained, and that the substitution of one well-known mechanical equivalent for another is not such a change as will alter the character of the machine, or shield infringers from the consequences of an infringement. Having said thus much, he declares explicitly the extent and character of his claim: "What I claim as my invention, and desire to secure by letters patent, is the movable bed or carriage for carrying and advancing the blocks of wood in combination with the reciprocating cutters, operating at right angles with the surface of the bed or carriage, substantially as and for the purpose specified."

You will see, gentlemen, by this, that he claims a combination consisting of two elements, or two elementary parts only; this movable bed or carriage carrying and advancing the blocks of wood, in combination with the reciprocating cutters, operating at right angles with the surface of the bed or carriage, substantially as and for the purposes specified. Secondly. He says: "I also claim, in combination with the bed or carriage, and reciprocating cutters, the employment of the clearing plate through which the cutters pass, substantially as and for the purpose specified."

And here you will perceive, gentlemen, that in this claim he makes no mention of the functions or office of this clearing plate, for the purpose of holding down the wood to be split during the operation of the machine.

In the next claim he says: "And finally, I claim providing the said clearing plate with an elastic pad, and imparting to it an up and down motion, substantially as specified, in its combination with the bed or carriage, and reciprocating cutter, as specified; by means of which the said plate, under the combination specified, performs the double office of holding the blocks and clearing the cutters, as specified." This is the language of the claim. The construction of this language is for the court. It is a question of law for the court to determine what construction shall be placed upon the language contained in this specification; and it is important for you to know precisely the construction which I have put upon this claim, and the extent of the claim, as construed by the court.

The plaintiff claims in his invention, and has patented: (1) The movable bed or carriage, for carrying and advancing the blocks of wood to be cut or split exhibited in the drawings, and described in the specification annexed to his patent, in combination with the reciprocating cutters, operating at right angles with the surface of the bed or carriage, substantially as and for the purposes set forth in the specification. (2) The employment of the clearing plate through which the cutters pass, in combination with the bed or carriage and reciprocating cutter, substantially as and for the purposes set forth in such specification. (3) The providing of the clearing plate with an elastic pad, and imparting to it an up and down motion, substantially as specified in its combination with the bed or carriage and reciprocating cutters, as specified, by means of which such clearing plate is enabled, under the combination specified, to perform the double office of holding the blocks and clearing the cutters, as set forth in the specification.

All these claims, it will be observed, are of combinations simply, and neither presents a claim that either of the elements or elementary parts of the combination specified is new, when considered as a distinct and separate mechanical instrument, device, or organization. For all the purposes of this action each of those elementary parts, as a separate and distinct device, is conceded to be old, and not the invention of the plaintiff; but he claims that he has brought them into new and useful combinations by the exercise of his genius as an inventor; and if he has done so, he had a right to obtain a patent for such combinations. He has claimed the particular combinations set forth in his specifications and claims, and he has claimed and patented nothing more. His patent is, then, for the three several combinations mentioned in the three several claims at the end of his specification, and it is for these three combinations only, and not for either of the elementary parts of either of such combinations.

To these claims I will again ask your particular attention: (1) The first claim is of two elements or elementary parts, viz: the movable bed or carriage, for carrying and advancing the blocks of wood to be split, with the reciprocating cutters operating at right angles with the surface of the bed or carriage. (2) The second claim is of a combination of three elements or elementary parts, viz: The said bed or carriage, the said reciprocating cutters, and the clearing plate through which the cutters pass when such plate is arranged and used for a clearing plate only. (3) The third claim is of a combination of the same number of elementary parts as the second, but by a change in the character and operation of the clearing plate, by which

it performs the double office of a clearing plate and an elastic pad, to hold down the wood to be split. this claim may be said substantially to embrace four elements or elementary parts, viz:' The said bed or carriage; the said reciprocating cutters; the said clearing plate, provided with an elastic pad, and having an up and down motion by which it is enabled to hold the wood to be split, and the clearing plate performing its simple and distinct office as a clearer. In other words: The clearing plate in this claim might be considered as having two distinct offices or functions, and in regard to these offices or functions, as being constituted of two elementary parts, one that gives it the function of a clearing plate only, and the other which gives it the additional office of holding the wood upon the bed during the operation of the machine.

We have already seen, by the statements read from the specification, that the plaintiff in these claims does not intend to confine himself to the form of knife represented and described in his drawings and specifications. And it appears by such statement as well as by the second and third claims, that he does not limit himself in his second claim to the use of a moving clearing plate, having an elastic pad, and performing the office of holding down the wood to be split, as well as the office of a clearer, for the second claim covers it as a simple clearing plate, permanently affixed, in such a manner as to perform its single function as a clearer, and the third claim embraces it when provided with an elastic pad, and having an up and down motion, by which it is enabled to perform the double office of a clearer, and of a pressure pad, to hold in place the blocks of wood to be split.

And we have also seen that the plaintiff, in his specification has avowed his determination to enforce his rights against infringers, who substitute for the elementary parts of his several combinations those mechanical equivalents which are frequently resorted to, in order to disguise the true character of a machine, and to conceal an infringement, by changing the form of a machine, while its principle, its spirit, and its substance are retained.

We have also observed that the plaintiff has stated that he does not intend to confine himself to the use of an endless bed or carriage, as he describes (and as the jury will readily perceive) will answer the purpose, but not so well. This is the only specific intimation of the particular change which may be made in the carriage or bed used, without changing the principle of the plaintiff's invention; but a substitution therefor of any mechanical equivalents, for the uses to which it is to be applied, would not change its principle, or carry it beyond the claim of the patent. To do this, the substance and mode of operation, and not the form merely, must be changed. But in determining the character of the bed or carriage claimed in order to determine the question of substantial identity, as connected with the questions of novelty and infringement, we must look to the claim and specification and the drawings annexed, and to the uses for which the patentee states he has invented it.

A movable bed or carriage being one of the essential and vital elements of each of the combinations patented, perhaps the first and most important question upon the construction of this patent is, whether this movable bed or carriage must be simply a movable bed or carriage, either endless or reciprocating, or operating substantially like an endless or reciprocating bed or carriage, or whether the plaintiff has, by the terms and true construction of his claims, confined those claims to combinations in which the endless bed or carriage described in his specification, or its equivalent, is found as one of the elementary parts. In other words, whether the peculiar construction or characteristics of the movable bed or carriage are important to the existence of the combinations claimed by the patentee. This question is an important one, because your finding upon the question of novelty may depend upon it; for if the peculiar characteristics of the movable bed or carriage are not necessary in the movable bed or carriage, which must necessarily constitute one of the essential elements of the patented combination, you may find that combination existing in prior machines, when it may not be found in such prior machines if the peculiar characteristics of the movable bed or carriage are necessary to the existence of such combination.

It is also an important question upon the subject of infringement; for, in order to infringe, the defendant must use one or more of the combinations patented, in substance, though it is not necessary that they should be identical in form. After all the reflection I have been able to bestow upon this question, and under the evidence which has been given in reference to the use of endless beds for other purposes, I am of opinion that the plaintiff's claims are limited to the combinations specified, in which a moving bed or platform, having the peculiar and distinguishing features and characteristics of the movable bed or carriage described in the specification, is to be found, and the patent can not be avoided by the prior use or infringed by the subsequent use of any combination in which a movable bed or carriage, having those peculiar and distinguishing features, or its equivalent, is not to be found.

The flanches or side ledges on this movable bed or carriage described in the plaintiff's specification, are proved by one of the very intelligent and sagacious experts produced on the part of the plaintiff, to be an essential feature, and characteristic of the form and construction of the movable bed or carriage described in the plaintiff's specification, and

the jury will see that in the practical operation of the machine it is intended to perform, and ordinarily does perform, an important office, in confining and holding to its place the blocks of wood to be split; and if there are any other peculiar features or characteristics in the bed or carriage, or trough, as it is called in one portion of the specification, those must also be taken into consideration by the jury.

A most important question of fact. and one which may possibly dispose of this whole case, is whether the defendant has used in his machine a mechanical equivalent for the movable bed or carriage described in the plaintiff's specification, with its peculiar features and characteristics, or whether the defendant had used in his machine devices substantially adopted from the movable bed or carriage of the plaintiff, and which produce the same results by substantially the same mode of operation. I have used frequently the term "equivalent," or "mechanical equivalent," in the progress of this charge, and it is perhaps necessary that I should state to you more fully than I have yet done, my views of what, in the sense of the patent law, constitutes an equivalent. It is not enough in order to show that one mechanical device is the equivalent of another, that it accomplishes the same result; that it produces the same effect, unless that effect is produced by substantially the same mode of operation. In other words, the ultimate end and object of a machine may be to produce a fabric or manufacture of a certain kind, and it may well appear, in the progress of invention, that several different inventors may have invented different machines, producing the fabric, or that manufacture, by entirely different modes of operation, and in that event each successful inventor might be entitled to his patent. They might perhaps be so entirely distinct, and different, and independent in their organization and mode of operation, that a patent for each might stand, covering the whole machine as an entirely distinct and independent organization—as a single organization; or, they might stand, one being an improvement on the other. It is not, therefore, sufficient, in order to authorize the jury to find that one device, or a series of devices, all operating to the same end, is or are mechanical equivalents for other devices, unless they effect the same substantial purpose, by substantially the same mode of operation. And in this case, as I have before said, the question is, whether the defendant uses a mechanical equivalent for the plaintiff's movable bed or carriage, because there is no pretense that a movable bed or carriage, identical in form with the one described and patented by the plaintiff, has been used by the defendant, and therefore the question is simply whether its equivalent has been used.

Upon this question the jury have had the benefit of full and able arguments by the respective counsel; of a careful examination and explanation of the models, and the operation and effects of the working machines; and of the carefully considered and deliberately expressed opinions of the experts on both sides. In reference to these opinions, it happens, as it usually does in patent cases, that the opinions of the two experts on one side are apparently, if not actually, diametrically opposed to the opinions of the two experts on the other side. Indeed, it may be assumed in this and in most other patent cases, that neither party would have called the experts on his own side, unless he had supposed that their opinions in reference to the straining point of the case, would be directly opposed to the opinions which he supposes will be expressed by the experts of his adversary. Their well-considered and deliberately-formed opinions are asked in advance, and if they are found to be adverse to the party who seeks such opinion, that expert is not called on his part. I do not say this, gentlemen, to impeach the integrity or fairness of the experts, or to convey the impression that they are wanting in intelligence or mechanical knowledge. for few experts possess any of these qualities in a higher degree than those called in this case; but to show you that upon these questions of mechanical equivalents, of substantial identity, and substantial difference of organization, and mode of operation, these opinions are to be regarded by you as opinions merely, and that you must decide which opinions are correct, after carefully considering such opinions, and the reasons upon which the experts have told you they are based, in connection with the other evidence in the case, and that furnished by your own senses in the examination of the models which have been given in evidence. In no other way can you decide between the conflicting opinions of these experts, and it is your opinions and judgments, and not the opinions of the experts. which must in the end determine the questions of substantial identity and equivalents litigated in the case. In that you are to consider the evidence, the opinions of the experts, the reasons they have given for their opinions, to look and consider the models, to deliberately exercise your own judgments, and then decide.

The duty and responsibility of determining all the questions of fact, the credibility of witnesses, and every question which in the end becomes material as a question of fact, must be determined by you, and by you alone. The court, ordinarily, has enough to do to dispose as it best may of the questions of law arising in the progress of the case. You must understand me as not intending to touch at all upon the ground which it is your duty to occupy. Upon the other hand, you have been told, and prop-

erly told, I think, by the counsel upon both sides, that the questions of law involved in the case are questions which the court must dispose of, and that its determination in reference to these questions of law is, for the purpose of the present trial, conclusive upon the parties, and also upon you. Indeed, this is necessary to the correct and proper administration of justice. If the court, in determining any question of law, should err (as they are very likely to do), a full remedy is provided by law, by an appeal to the highest judicial tribunal of the Union; but if you should take upon yourselves to determine any question of law, in opposition to the determination of the court, no exception can be made to that determination, and no mode of review has been or can be provided for the purpose of reversing any such erroneous determination. You will, therefore, take the ruling of the court upon the questions of law which I have already discussed, as conclusive upon your judgment for the purposes of the present case.

The jury found a verdict for the plaintiff.

[NOTE. Patent No. 12,857 was granted to J. A. Conover, May 15, 1855. For other cases involving this patent, see Conover v. Rapp, Case No. 3,124; Johnson v. McCullough, Id. 7,394; Conover v. Mers, Id. 3,123; Conover v. Dohrman, Id. 3,120; Johnson v. Onion, Id. 7,401; Conover v. Mers, Id. 3,122; and Mers v. Conover, 92 U. S. 1,008]